IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KIMBERLY ERANE KEMP,
Personal Representative of
Billy Wayne Kemp                      PLAINTIFF

v.        Civil No. 15-5170

SHERIFF KELLY CRADDUCK;
DEPUTY CHARLIE ROBINS; and,
DEPUTY SCOTT SULLIVAN                  DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case brought pursuant to 42 U.S.C. § 1983. The Complaint was filed by Billy Wayne Kemp (Kemp) proceeding *pro se* and *in forma pauperis.* Subsequently, Mr. Kemp died in an automobile accident. His Mother, Kimberly Erane Kemp, as personal representative, was substituted in his place (Doc. 33).

Kemp contends that his constitutional rights were violated when a traffic stop was made and property he claimed ownership of was seized. Defendants have filed a motion for summary judgment (Doc. 34). A hearing was held on November 15, 2016, to allow the Plaintiff to respond orally to the motion. At the conclusion of the hearing, the case was taken under advisement pending preparation of this report and recommendation.

### I. BACKGROUND

On November 4, 2013, a warrant was issued for Kemp's arrest for failure to appear and failure to pay fines and costs. Defts' Ex. A-1 at 6. On August 4, 2014, a bill of sale indicates that Kemp purchased a 2001 Dodge Ram truck for $3,000. Defts' Ex. A-1 at 2; Defts' Ex. B at

-1-

16-18.[1] According to Kemp, Billy "Trey" Russell (Russell), a friend and business acquaintance, was present at the time but was not involved in the purchase. Defts' Ex. B at 17-19. Kemp received the title that day. Id. at 20.

Doug Klingman (Klingman), the owner Mo's Treasures and More, indicated he had sold the truck to a "big guy with tatoos." Defts' Ex. A-1 at 21. Klingman stated that when he sold the truck he left the title open because the buyer indicated he was going to title the truck in someone else's name. Id.

On September 16, 2014, Klingman indicated two females came into his business and wanted to sell the truck back to him. Defts' Ex. A-1 at 21-22. Klingman stated he would have to think about it because something did not seem right to him. Id. at 32. Klingman did fill out an affidavit stating he had sold the truck and took it back because of non-payment so that the truck could be sold without having been transferred into Kemp's name. Id. at 22.

On September 16, 2014, Kemp went to Avoca Auto Sales to sell the truck. Defts' Ex. A-1 at 19. Because he needed the money, Plaintiff sold it for $1,500. Defts' Ex. B at 22. However, based on information obtained from a confidential informant, the police believed the Plaintiff had stolen the pickup from Russell while he was in rehabilitation. Defts' Ex. A-1 at 18; Defts' Ex. C at 2 ¶ 8.

The police had Kemp under surveillance at Avoca Auto Sales. Defts' Ex. A-1 at 18. Corporal Scott learned that there was a warrant out on Kemp for failure to appear and that his driver's license had been suspended. Id.

---

[1] Defendants' Exhibit B is Kemp's deposition. Page references to this exhibit are to the deposition page number not the CM/ECF page number.

Sergeant Robbins notified Corporal Scott Sullivan that Kemp was operating a blue Chrysler Sebring and leaving the car lot. Defts' Ex. A-1 at 18-19. Corporal Scott Sullivan initiated a traffic stop. Id. Kemp was put under arrest based on the warrant. Id. There were a four passengers in the vehicle, Oxano Kemp, Hershel Johnson, Shelbi Ford, and Amanda Melchor. Id. at 19. Shelbi Ford was also arrested based on an active warrant. Id. The vehicle was released to another passenger. Id.

Corporal Sullivan seized a bill of sale, a check, and Kemp's cellular phone. Defts' Ex. A-1 at 19. Corporal Sullivan was not involved in the decision to seize the truck. Defts' Ex. C at 2-3 ¶ 9.

Detective Robins spoke with Kemp who stated that the truck belonged to him, but that he had sold it to Russell for $3,000. Defts' Ex. A-1 at 20; Defts' Ex. C at 3 ¶ 10. When Russell did not pay, Kemp took the truck back. Id. Kemp then advised Sergeant Robbins that he had sold the truck to Avoca Auto Sales for $1,500. Id. at 20 & 31. Melchor, however, stated that the truck belonged to Russell who was currently in a rehabilitation center. Id. at 20. Melchor stated that Billy and Oxana Kemp[2] were trying to sell the truck before Russell got out. Id.

Detective Robins obtained the bill of sale, title, and affidavit of alteration from Avoca Auto Sales. Defts' Ex. C 3 at ¶ 12. Based on the information he had and his review of the documents, he believed that "Kemp and or his wife had altered the documents to appear to show them as the owners of the truck." Id. Detective Robins seized the truck. Id. at 3 ¶ 13. He then contacted the Criminal Investigations Division and the Prosecutors Office and was told the truck

---

[2] Her first name is spelled two different ways in the record: Oxana and Osana.

AO72A
(Rev. 8/82)

and all documents should remain at the Sheriff's Office pending the investigation into any additional charges. Id.

Detective Robins contacted Russell, and he stated he was struggling with addiction and that he did not know how Kemp got his truck. Defts' Ex. A-1 at 20; Defts' Ex. C at 4 ¶ 16. Russell stated he did not give Kemp permission to have, or sell, the truck. Id.

On September 18, 2014, Detective Robins told Kemp "that because of confusing reports and documents, possession of the truck was more of a civil matter and he needed to go through Circuit Court to determine the ownership and rightful possession of the truck. I told him it was at the impound at the Benton County Sheriff's office until then." Defts' Ex. C at 4 ¶ 17; Defts' Ex. A-1 at 22.

Plaintiff contends that the truck, the $1,500 check, and a cell phone were illegally seized following the traffic stop. Kemp maintains he was deprived of his property without due process. As of the date of the hearing, the truck remained in the impound lot. The cell phone was released to Osana Kemp on September 20, 2014. Id. at 33; Defts' Ex. B at 56.

With respect to Sheriff Cradduck, Kemp testified he was not aware of Sheriff Cradduck having talked to anyone personally about this issue. Defts' Ex. B at 61. He did know his wife had talked to Sheriff Cradduck's secretary who said she would give him a note and they would investigate the matter. Id. at 60. Kemp contends Sheriff Cradduck failed to call Kemp's wife back. Id. at 62. Kemp believes his wife would have received a call back from Sheriff Cradduck had he investigated the issue. Id. Further, Kemp testified that Sheriff Cradduck "wasn't observant of his officers to see that they was--they was making a illegal--illegal seizures." Id. Kemp testified he was complaining about Sheriff Cradduck's supervision and investigation of the matter. Id. at 63. Kemp concedes Sheriff Cradduck was not present when Kemp was

arrested and that neither Kemp nor his wife had any direct contact with Sheriff Cradduck. Id.

With respect to Detective Robins, Kemp testified that Detective Robins did not go through the proper procedures in civil court to get a warrant to seize Kemp's property. Defts' Ex. B at 68. Specifically, Kemp was referring to the truck, the check, and the bill of sale. Id. at 69. Kemp conceded the truck was not seized from him, but since the transaction was never completed by his cashing of the check he believes it was still his property. Id. at 69-70. Kemp did not contend he was entitled to both the check and the truck--just one or the other. Id. at 71-72. However, Kemp testified Detective Robins advised Avoca Auto Sales to cancel the check. Id. at 71.

In connection with the phone, Kemp testified it should never have been seized. Defts' Ex. B at 73. He also believed that Detective Robins had searched his phone without a warrant. Id. This belief was based on his wife telling him "apps" on the phone had been moved around. Id.

With respect to Deputy Sullivan, Kemp testified that the traffic stop was illegal. Defts' Ex. B at 76. Kemp testified Deputy Sullivan also seized his property on orders from Detective Robins and called the parole office resulting in a white warrant for Kemp's detention. Id.

Kemp testified he never talked to Russell after he was arrested. Defts' Ex. B at 87. Kemp did not believe his wife has talked to Russell either. Id.

With respect to his official capacity claims, Kemp testified he believed the officers violated policy when they arrested him and seized his property. Defts' Ex. B at 64. However, he testified that Benton County was extremely bad about crossing boundaries for "going into people's houses without--without warrants to--to taking people's stuff without warrants." Id. at

AO72A
(Rev. 8/82)

65. Kemp stated he was aware of other cases that would show Benton County had seized property illegally. Id. at 67. However, he could not locate the list of cases. Id.

Kemp was charged with driving while his license was suspended, contempt, and a hold for violating the conditions of his parole. Defts' Ex. A-1 at 10-11, 18, 28. He was booked into the Benton County Detention Center. Defts' Ex. A-1 at 12-13. He remained incarcerated there until February 2, 2015, when he was transported to the Arkansas Department of Correction. Id. at 36.

Mrs. Kemp testified that she had no personal knowledge regarding the sale of the truck. However, she knew Kemp was in possession of the title to the truck. She also knew that Russell had borrowed the truck several times.

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or

suspicion is insufficient to survive a motion for summary judgment." Id. (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants contend they are entitled to summary judgment for the following reasons: (1) Sheriff Cradduck was not personally involved in the seizure; (2) the seizure was reasonable as the items were in plain view or seized incident to arrest; (3) Kemp was not denied due process as he had adequate post-deprivation remedies; and, (4) there is no basis for official/county liability.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show (1) a deprivation [under color of law] of (2) a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986); *Davis v. Hall*, 992 F.2d 151 (8th Cir. 1993). Section 1983 may not be "used to duplicate state tort law on the federal level." *Medina v. City and County of Denver*, 960 F.2d 1493, 1495 (10th Cir. 1992) (citation omitted).

**A. Liability of Sheriff Cradduck**

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County*

-7-

*Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility). Here, Plaintiff has established no causal link or direct responsibility of Sheriff Cradduck to the alleged deprivation of rights. Sheriff Cradduck is entitled to summary judgment.

### B. The Traffic Stop

"An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle, even if the officer would have ignored the violation but for a suspicion that greater crimes are afoot." *United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an objective reasonableness standard is applied." *United States v. Mallari*, 334 F.3d 765, 766 (8th Cir. 2003) (internal quotations and citations omitted). An officer is justified in making a stop "when the officer objectively has a reasonable basis for believing that a driver has breached a traffic law." Id. at 767 (internal quotations and citations omitted).

Here, Corporal Scott knew, prior to the stop, that there was a warrant out on Kemp for failure to appear and that his driver's license had been suspended. The traffic stop was valid.

### C. Deprivation of Property

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. What process is due when a person is deprived of property is analyzed under the balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976).

The Supreme Court has held that neither the negligent nor the intentional deprivation of personal property violates due process so long as adequate post-deprivation remedies exist. *See Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled on other grounds); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional taking of property does not violate due process so long as the state provides adequate post-deprivation remedies); *Sellers by and through Sellers v. Baer*, 28 F.3d 895, 902-03 (8th Cir. 1994) (inadvertence, negligence, or even gross negligence is insufficient to state a claim under § 1983); *Reese v. Kennedy*, 86 F.2d 186, 187 (8th Cir. 1989) (state tort remedies preclude § 1983 claim for deprivation of property). "'*Parratt* and *Hudson* represent a special case of the general *Matthews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide.'" *Walters v. Wolf*, 660 F.3d 307, 312 (8th Cir. 2011) (*quoting Zinermon v. Burch*, 494 U.S. 113, 128 (1990)).

Here, there is no question that at the time the was property seized the Defendants had conflicting information on who was the lawful owner of the vehicle--and it follows had the lawful right to sell the vehicle. Kemp was advised that the issue of who actually owned the vehicle would need to be determined through a civil lawsuit.

Kemp makes no argument, and could not under the facts, that he could not file a state tort action to determine the ownership of the property and/or determine whether Defendants were

improperly keeping the truck in impound. Arkansas recognizes a cause of action for conversion. *See e.g., Elliot v. Hurst*, 307 Ark. 134 (1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). Plaintiff could also bring a cause of action for replevin under Ark. Code Ann. § 18-60-801 *et seq.* Additionally, Rule 15.2 of the Arkansas Rules of Criminal Procedure also provides a method for filing a motion for return of seized property. As Plaintiff has adequate post deprivation remedies, due process is satisfied.

### D.  Official Capacity Liability

Defendants are entitled to dismissal of the official capacity claims. While Plaintiff made the bare assertion that Benton County had a policy or custom of unlawfully seizing property, he introduced nothing to suggest such a custom or policy in fact exists. Even if we assume Kemp's rights were violated in this case, an assumption not supported by the record, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Mann v. Yarnell*, 497 F.3d 822, 827-28 (8th Cir. 2007) (*quoting City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). No such claim is made in this case.

Further, even if Defendants violated county policy, this is insufficient to support county liability. "A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice." *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) (citation omitted).

AO72A
(Rev. 8/82)

## IV.  CONCLUSION

For the reasons stated, I recommend that the Motion for Summary Judgment (Doc. 34) filed by the Defendants be granted and the case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of March, 2017.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)